**E-FILED**
**CNMI SUPREME COURT**
E-filed: May 04 2023 05:43PM
Clerk Review: May 04 2023 05:43PM
Filing ID: 69950199
Case No.: 2022-SCC-0019-CIV
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

ANAKS OCEAN VIEW HILL HOMEOWNERS' ASSOCIATION, LTD.,
*Petitioner-Appellant,*

*v.*

PERRY INOS, JR. ET AL.,
*Respondents-Appellees,*

AND

ATKINS KROLL SAIPAN, INC.,
*Applicant-Appellee.*

**Supreme Court No. 2022-SCC-0019-CIV**

**ORDER DENYING PETITION FOR REHEARING AND MOTION FOR RECONSIDERATION**

**Cite as: 2023 MP 4**

Decided May 4, 2023

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
JUSTICE PRO TEMPORE ROBERT J. TORRES, JR.
JUSTICE PRO TEMPORE F. PHILIP CARBULLIDO

———————

Superior Court Civil Action No. 22-0103-CV
Judge Pro Tempore David A. Wiseman, Presiding

———————

PER CURIAM:

¶ 1      This matter comes before the Court on Appellee Atkins Kroll Saipan, Inc.'s ("Atkins Kroll") petition for rehearing and motion for reconsideration of the Court's March 7, 2023 order. In the order, the Court found that the Superior Court had jurisdiction to hear ANAKS' petition. Atkins Kroll argues that the Court (1) erred by determining that the Zoning Board issued the conditional use permit ("CUP") to Atkins Kroll on April 13, 2022; (2) overlooked or misapprehended ANAKS' challenge to the Zoning Board's oral vote on March 18, 2022; (3) did not consider the applicability of the Open Government Meetings and Records Act; (4) infringed on the Legislature's power to set the appeal period under 1 CMC § 9112(b); and (5) should grant a rehearing to avoid manifest injustice.

¶ 2      ANAKS moves for this Court to issue the mandate forthwith pending resolution of Atkins Kroll's petition or issue a temporary stay of the permit. ANAKS also seeks clarification of the Court's order as to whether it may move again for a stay of the permit in the Superior Court upon remand.

¶ 3      We DENY Atkins Kroll's petition for rehearing and motion for reconsideration. The mandate shall issue forthwith.

## I. FACTS AND PROCEDURAL HISTORY

¶ 4      On January 4, 2022,[1] Atkins Kroll applied for a conditional use permit to construct and operate a Toyota/Lexus car dealership and vehicle repair facility next to ANAKS' condominiums in Puerto Rico, Saipan. On March 18, 2022, the Zoning Board held a special meeting and, by oral vote, unanimously approved Atkins Kroll's application, subject to nineteen express conditions. The Zoning Board Administrator signed the conditional use permit on March 25, 2022, in accordance with the permit's written terms. The permit's terms also required Atkins Kroll to sign each page and declare, under penalty of perjury, that the permit "was and still is true and correct" and that it had "reviewed this permit and underst[ood] the contents of this permit and its conditions." Conditional Use Permit No. 2020-10382 at 4. An Atkins Kroll representative signed the permit on April 13, 2022. The Zoning Board issued a written order that restated the permit's terms on April 21, 2022. ANAKS filed its petition for judicial review on May 13, 2022.

¶ 5      The Superior Court dismissed with prejudice ANAKS' petition. It found that the court did not have jurisdiction because the oral vote on March 18 constituted the final agency action that started the 30-day window to appeal under 1 CMC § 9112(b). We reversed and found that the permit issued to Atkins Kroll

---

[1]    In the Court's order, we noted that Atkins Kroll stated that "they applied for a conditional use permit on December 17, 2021. But the permit issued on April 13 states that Atkins Kroll applied for the permit on January 4, 2022." *ANAKS,* 2023 MP 1 ¶ 5 n.6.

was the final agency action from which ANAKS may appeal. *ANAKS v. Atkins Kroll Saipan,* 2023 MP 1 ¶ 43. We further determined that the CUP's date of issuance was on April 13, 2022, and because the permit was issued on this date, we found that ANAKS' petition on May 13 was timely filed under 1 CMC § 9112(b). *Id*. ¶ 41.

¶ 6    Atkins Kroll now petitions for a rehearing and moves for reconsideration. It contends that the permit was issued on March 25, 2022, and not on April 13, 2022. Atkins Kroll Pet. for Rehearing and Mot. for Reconsideration at 6.

¶ 7    Atkins Kroll's submission appears to treat a Petition for Rehearing and a Motion to Reconsider interchangeably. A Petition for Rehearing and a Motion to Reconsider are governed by different rules with different procedural requirements. *Compare* NMI SUP. CT. R. 40 *with* 27-2(d). Therefore, we first address its petition for rehearing and subsequently its motion for reconsideration.

## II. PETITION FOR REHEARING
### A. Standard of Review

¶ 8    Petitions for rehearing "must state with particularity each point of law or fact that the petitioner believes the Court has overlooked or misapprehended and must argue in support of the petition." NMI SUP. CT. R. 40(a)(2). Such petitions "[do] not ordinarily allow the petitioner to raise the same issues and repeat the same arguments already heard and decided on appeal, nor does it allow the raising of new issues or contentions not formerly raised on appeal, except under extraordinary circumstances." *In re Estate of Deleon Guerrero*, 1 NMI 324, 326 (1990). "Nor should a petition for rehearing be made routinely or as a matter of course." *Id*. at 327–28. *See also N. Marianas Coll. v. Civil Serv. Comm'n*, 2007 MP 30 ¶ 2. Rather, a successful petition requires showing "how 'the Court ignored or incorrectly construed legal issues or factual matters' in resolving the case." *Commonwealth v. Bashar*, 2016 MP 2 ¶ 3 (quoting *Commonwealth Ports Auth. v. Tinian Shipping Co.*, 2008 MP 2 ¶ 3).

¶ 9    Moreover, "[o]ther courts have similarly ruled on this standard, reiterating that a petition for rehearing serves a limited purpose of allowing the court to correct an error, and does not provide a party an opportunity to reargue its case." *Estate of Ogumoro v. Ko Han Yoon*, 2020 MP 4 ¶ 7 (citing several cases from the Eighth and Ninth Circuits). "Parties should take care to limit their arguments on rehearing to those that allege the Court missed or misinterpreted points of law or fact." *Id.*

### B. Date of the Permit's Issuance

¶ 10    The Court found that the Zoning Board issued Atkins Kroll the CUP on April 13, 2022. *ANAKS,* 2023 MP 1 ¶ 5. Atkins Kroll argues that March 25, 2022, is the date of issuance because that is when the Zoning Board Administrator signed the CUP. We review each argument and determine whether Atkins Kroll sufficiently showed the Court overlooked or misconstrued this fact. *Estate of Ogumoro*, 2020 MP ¶ 8 (citing *Bashar*, 2016 MP 2 ¶ 3).

¶ 11    Atkins Kroll contends that the Zoning Board Administrator's signature alone was the Zoning Board's "last word on the matter" and when the 30-day appeal period began. ANAKS' petition, filed on May 13, was thus late by 49 days.

¶ 12    Atkins Kroll's reliance on the Zoning Board Administrator's signature is misplaced. While the CUP states it was "issued by" the Zoning Board Administrator, it remained incomplete because a critical step was required by its own terms: the signing, under penalty of perjury, by a representative of Atkins Kroll. Atkins Kroll's signature affirmed that the application "was, and still is true and correct" and that it "reviewed this permit and underst[ood] the contents of this permit and its conditions." Conditional Use Permit No. 2020-10382 at 4. The CUP also required Atkins Kroll to initial each page of the permit. *Id.* at 1-4.

¶ 13    When viewed under the Commonwealth Administrative Procedure Act ("CAPA") and established precedent, Atkins Kroll's signature is necessary for two reasons. First, the signature operates as an affirmation that the permit's contents remain "true and correct." The Zoning Board required Atkins Kroll to verify that there have been no changes, modifications, errors, inaccuracies, or any other statements or information that would be contrary to the Zoning Board's determination or the reasons for its decision on March 18. If there were, Atkins Kroll would have had to notify the Zoning Board and not sign the permit. That process would be changed if Atkins Kroll could not make such a representation. Thus, the signature consummates the Zoning Board's decision-making process because it provides the assurances so the permit can be issued.

¶ 14    Second, the permit must be signed by Atkins Kroll "under the penalties of perjury." The permit offers no discretion regarding this requirement. That criminal penalties mandatorily apply indicates the importance of this step to the decision-making process of the Zoning Board.

¶ 15    However, Atkins Kroll characterizes its signature as merely a written acknowledgment it received the permit. Atkins Kroll Pet. for Rehearing & Mot. for Reconsideration at 6. (citation omitted). In support, it cites *Pac. Saipan Tech. Contractors v. Rahman*, 2000 MP 14 ¶ 26, which held that "issuance of a decision cannot be construed to mean the receipt of such decision." (citation omitted). This case addressed when a 15-day appeal period began to run after the Department of Labor and Immigration (now the Department of Labor) decided on a labor complaint filed under the repealed Nonresident's Workers Act. *Id.* ¶ 15. The Court found that the date of issuance of the Secretary's decision was "the date the decision is entered or filed." *Id.* ¶ 18.

¶ 16 To begin, the Court's order did not characterize Atkins Kroll's signature as a "receipt."[2] Instead, the signature line operates as an affirmation,[3] one that the Zoning Board explicitly requires applicants to sign. Atkins Kroll is correct that "receipt" cannot be construed to mean issuance. The *Pac. Saipan* Court quoted a 1996 Federal Circuit Court decision clarifying the definition of "issuance" for the National Childhood Vaccine Act. It states:

> The term "issuance" in section 12(e)(1) cannot be construed to mean "receipt." The pertinent common meaning of the verb "issue" is "to be given out officially, to be published," and its legal meaning is "to send out officially . . . to publish or utter." Both of those definitions denote promulgation of the decision by the decisionmaker, to its subsequent receipt by the parties. To be sure, the term "issuance," as used in section 12(e)(1), could be accorded several slightly different meanings. For example, it could be interpreted to mean rendition, to mean public announcement, or to mean formal filing with the clerk of the court. Rule 23 of the Vaccine Rules, R. Ct. Fed. Cl., Appendix J, interprets the term "issuance" to mean filing, so that the 30-day review period begins to run when the special master's decision is filed with the clerk of the Court of Federal Claims. *That interpretation is a reasonable one, and it has the virtue of providing an unambiguous and well-documented starting point for the 30-day period.*
> *Hervey v. Sec'y of Health and Human Servs.*, 88 F.3d 1001–02 (Fed. Cir. 1996) (internal citations omitted) (emphasis added).

*Hervey* found a reasonable interpretation that the date of issuance meant "filing." However, this finding does not prevent other reasonable interpretations of "issuance" for other agency decisions within the Commonwealth, particularly where those other agency decisions are governed by different statutes that lack the language the *Hervey* court found persuasive. In the National Childhood Vaccine Act and other similarly written statutes, the filing date could be the date of issuance. This is not the case here because no statutory language defines issuance.

¶ 17 As the Court stated in its order, "each jurisdiction must look to its own statutory scheme to determine how best to resolve the issue before it." *ANAKS,* 2023 MP 1 ¶ 40. When looking at the applicable authority, it is unclear when a decision is made final, let alone the date of issuance. For example, the Court reviewed 2 CMC § 7221(j)(2), which states that "no decisions of the Zoning Board shall be made other than in a duly noticed public meeting." The Court

---

2  "A receipt is the written acknowledgment that something has been received." Black's Law Dictionary (9th ed. 2010).

3  An affirmation is a "solemn declaration made *under penalty of perjury*, but without an oath." Black's Law Dictionary (9th ed. 2010) (emphasis added).

found, however, that this statute was too vague in determining whether such decisions are final or need to be in writing. As we stated:

> Section 7221(j)(2) sets forth the procedures of Zoning Board meetings and how they operate. It provides, *inter alia*, how often the Zoning Board must meet, the notice requirements of such meetings, the parameters of what can be discussed at meetings, and addresses the opportunity for public participation. The key clause at issue mandates that "no decisions of the Zoning Board shall be made other than in a duly noticed public meeting." *Id.* The confusion arises with the term "decisions" and whether such decisions made during a Zoning Board meeting are considered final for judicial review of a final agency action under Section 9112. It is also unclear whether such a decision must be made either in writing or may be expressed orally.
>
> A well informed person could conclude that the term "decisions" is ambiguous because it is capable of more than one meaning. The clause fails to specify whether decisions made during a Zoning Board meeting are considered final and whether such decisions alter the legal rights and obligations under the Commonwealth.
> *Id.* ¶¶ 29–30.

Due to the ambiguity of Section 7221(j)(2), the Court cannot rely on it for a determination of when the Zoning Board's final agency action occurred. Instead, the Court's determination that April 13, 2022 is the operative date provided an "unambiguous and well-documented starting point for the 30-day period." *Hervey*, 88 F.3d at 1002. As we explained:

> From a general policy standpoint, relying on the clear and exact written terms of the permit allows for a uniform, consistent, and explicit establishment of when a party's rights or obligations have been determined or from which legal consequences will flow. This aligns with the requirements of *Cody & Marianas Ins. Co*. This also best serves the public interest to require explicit documentation outlining the terms by which a party is bound.
> *ANAKS*, 2023 MP 1 ¶ 38.

¶ 18     Accordingly, the Court did not overlook or misapprehend a point of law or fact and did not err in finding that the Zoning Board issued the conditional use permit on April 13, 2022.


### C. The Legal Wrong Challenged

¶ 19     Atkins Kroll advances that the "legal wrong" suffered by ANAKS from which it appeals occurred during the Zoning Board's oral vote on March 18, 2022. Atkins Kroll Pet. for Rehearing & Mot. for Reconsideration at 7.

¶ 20    This argument, however, overlooks the finality requirement of an agency action. 1 CMC § 9112(d) ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). It is also not the standard by which the date of a final agency action is determined and from when the time for an appeal is calculated.

¶ 21    The Court addressed this issue in its order, which expounded on the two-part *Cody* test and why the issuance of the CUP on April 13, 2022 satisfied those two critical elements. *ANAKS*, 2023 MP 1 ¶¶ 19–25. This reasoning need not be restated herein.

¶ 22    Moreover, Atkins Kroll contends that the first conceivable "legal wrong" by an agency in Section 9112(b) triggers the 30-day appeal period under Section 9112(d). We reject this argument. This is not the standard under our jurisprudence. *Cody* and *Mariana Ins. Co.* require a final agency action to trigger the 30-day appeal period. *Id*. Alleging that a particular agency decision was a "legal wrong" does not render that decision a final action for judicial review. The Court's order does not misapply Section 9112(b) and follows established precedent.

### D. Applicable Laws and Statutes

¶ 23    Atkins Kroll next argues that the Court overlooked the applicability of the Open Government Meetings and Records Act ("OGA"). It cites 1 CMC § 9902(b), which states that a "final action" "means a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order or ordinance." Thus, the final action of the Zoning Board could only have occurred at the March 18 vote and not through any later action that occurred. Atkins Kroll Pet. for Rehearing & Mot. for Reconsideration at 8.

¶ 24    Atkins Kroll's reliance on Section 9902 is misplaced. The provision is not in the Commonwealth's Administrative Procedure Act ("CAPA"). Section 9902 clarifies that its definitions only apply to "this chapter," meaning Chapter 9, Division 9, of Title 1. The CAPA is in Chapter 1. It would be a misreading of our law to apply this definition to 1 CMC § 9112(d).

¶ 25    Moreover, it is important to note that the two-part *Cody* test specifies how to determine when the final agency action occurred to calculate the appeals period. The first prong of the *Cody* test requires an examination of when the agency's decision-making process was consummated. This could not have occurred on March 18 because issuing the CUP was still forthcoming. Instead, consummating the Zoning Board's decision-making process did not occur until the CUP was signed by Atkins Kroll under penalty of perjury. Once this occurred, Atkins Kroll's rights and obligations were determined, thus satisfying the second prong of the *Cody* test.

¶ 26    Further, Atkins Kroll argues that the Court improperly relied on inapplicable cases from other jurisdictions. Yet, it overlooks the Court's recognition of the limitations of these cases. The Court noted in ¶¶ 39–40 the

lack of uniformity across jurisdictions in the United States and the importance of reviewing each jurisdiction's statutory scheme independently to assess when a final decision occurred. *Id.* The Court explicitly stated that due to the lack of uniformity across jurisdictions, the cases "offer little guidance on resolving the issue before us and offer little persuasive value." *Id.* ¶ 40.

### *E. The Legislature's Power to Set the Appeal Period*

¶ 27    Atkins Kroll's assertion that the Court's order infringes upon the Legislature's power is also misplaced and unsupported. The Court's order follows the explicit terms of CAPA and the statutory scheme about the Zoning Board, its decisions, and when those decisions are no longer appealable. Atkins Kroll points to no authority that would indicate that the Court erred, that the intent of the Legislature was violated, or that the Legislature's ability to specify appeals periods was infringed. On the contrary, if the Legislature wishes to amend the applicable statutes herein to achieve a different result, it can do so.

### *F. Manifest Injustice*

¶ 28    Finally, Atkins Kroll overstates the alleged manifest injustice that would result if the Court upheld its original determinations. Contrary to its assertions, the Court's holding and clear delineation of when a Zoning Board's decision becomes appealable for the first time provides clarity on this issue. Atkins Kroll would have this Court dismiss ANAKS' appeal, and ultimately its entire case, due to the "chaos" that could ensue and the alleged manifest injustice that would result.

¶ 29    This Court is not addressing, and has not addressed, the merits of any party's respective positions on the Zoning Board's decision. Instead, the Court's opinion is limited to the jurisdictional issue and the timeliness of ANAKS' appeal. The Court has not ruled on the merits of a stay or injunction as it would be inappropriate to do so. The Superior Court also has not yet addressed the merits of whether a stay would be appropriate, and it remains pure speculation as to what the underlying court will do. Risks inherent in litigation do not rise to the level of manifest injustice to a party that suffers an unfavorable result. *See Young v. Thomas*, No. 0:14-cv-02550-JMC, 2015 U.S. Dist. LEXIS 67517 at *4 (D.S.C., May 26, 2015) ("[W]hile the manifest injustice ground acts as a catch-all provision, it is not meant to allow a disappointed litigant to attempt to persuade the court to change its mind.").

¶ 30    Additionally, we are unpersuaded that the Court's order would result in fundamental unfairness to Atkins Kroll. Again, Atkins Kroll remains free to continue with its construction if it so chooses. The Court's order, which would simply let ANAKS present its arguments in the lower court, would not lead to manifest injustice.

### III. MOTION FOR RECONSIDERATION

¶ 31    "A motion to reconsider an order entered by the full Court shall be decided by the full Court." NMI SUP. CT. R. 27–2(d)(3)(C). The full Court reviews for "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Commonwealth v. Eguia*, 2008 MP 17 ¶ 7 (citing *Camacho v. J.C. Tenorio Enter., Inc.*, 2 NMI 407, 413–14 (1992)). "A clear error exists only if after reviewing all the evidence we are left with a firm and definite conviction that a mistake has been made." *In re Estate of Pangelinan*, 2019 MP 12 ¶ 13 (internal quotations omitted). We review a motion to reconsider de novo. *See generally Owens v. Commonwealth Health Ctr.*, 2011 MP 6.

¶ 32    First, Atkins Kroll is not alleging an intervening change of controlling law presented. The Commonwealth Administrative Procedure Act, the Saipan Zoning Law of 2013, and relevant regulations remain unchanged and govern the Zoning Board. Second, no new evidence was presented.

¶ 33    Instead, Atkins Kroll argues that the Court made a clear error in determining that the Zoning Board issued the CUP on April 13, 2022, and that it will suffer manifest injustice. In Section II above, we addressed these arguments, and our reasoning remains the same.

### III. ANAKS' MOTION TO ISSUE MANDATE

¶ 34    ANAKS moves this Court to issue the mandate forthwith or issue a temporary stay while considering Atkins Kroll's petition for rehearing and motion for reconsideration. After issuance of this order, the mandate shall issue forthwith.[4]

### IV. CONCLUSION

¶ 35    We DENY Atkins Kroll's petition for rehearing and motion for reconsideration. The mandate shall issue forthwith.

SO ORDERED this 4th day of May, 2023.

/s/
ALEXANDRO C. CASTRO
Chief Justice

/s/
ROBERT J. TORRES, JR.
Justice Pro Tempore

---

4    ANAKS also seeks clarification as to whether it may refile its motion to stay upon remand to the Superior Court. The order did not address the merits of ANAKS' Motion to Stay.

/s/_____
F. PHILIP CARBULLIDO
Justice Pro Tempore

COUNSEL

Kathryn B. Fuller & Colin M. Thompson, Saipan, MP, for Appellant.

Rodney J. Jacob, Hagåtña, GU & Sean E. Frink, Saipan, MP, for Co-Appellee.

J. Robert Glass, Jr. & Keisha Blaise, Saipan, MP, for Co-Appellee.

Joey P. San Nicholas, Saipan, MP, for Co-Appellee.

NOTICE

This order has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In the event of discrepancies between this order and the order certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, email Supreme.Court@NMIJudiciary.com.